# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DEBRA REALE individually; NICHOLAS REALE; and ALAINA REALE, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY SHEA, in his official and individual capacities; KARL BEAVERS, in his official and individual capacities; CLARK COUNTY DEPUTY MARSHALS ASSOCIATION; LAS VEGAS JUSTICE COURT; DIANA SULLIVAN in her official and individual capacities; STEPHANIE WESTBAY, in her official and individual capacities; and CLARK COUNTY,<br><br>Defendants. | Case No. 2:14-cv-00583-APG-GWF<br><br>**Order Granting Motions to Dismiss**<br><br>(Dkt. ##16, 19, 29, 32) |

Judicial Deputy Marshal Louis "Ziggy" Reale committed suicide on March 21, 2014. (Dkt. #6 at 4.)  His widow and children filed this lawsuit alleging violations of the National Labor Relations Act, state law causes of action, and claims based on 42 U.S.C. § 1983.  Plaintiffs cannot properly assert their federal labor law claims against these Defendants; thus, those claims must be dismissed.  Moreover, Plaintiffs have not properly grounded their § 1983 claims in violations of constitutional rights.  Therefore, those claims, too, must be dismissed.

## BACKGROUND[1]

Ziggy began working at the Clark County Regional Justice Center ("RJC") as a Deputy Administrative Marshal in 2007. (Dkt. #22 at 8.)  In 2008, he became Judicial Deputy Marshal to Judge Diana Sullivan in the Las Vegas Justice Court. (*Id.*)  On September 26, 2011, the Eighth

---

[1] The facts contained in this section are for background only, and do not constitute my findings of facts.

Judicial District Court and the Clark County Deputy Marshals Association ("CCDMA") entered into a Memorandum of Understanding ("MOU") under which the parties agreed to work out a system defining employment conditions and orderly disposition of worker grievances. (*Id.* at 5.) However, the judges in the Eighth Judicial District Court and the Las Vegas Justice Court refused to enter into the MOU, relying on exemptions under NRS § 3.310 and NRS § 3.353. (*Id.* at 6.) Both statutes provide that a judge may appoint a Judicial Deputy Marshal, and that marshal will serve at the pleasure of the appointing judge.  CCDMA filed a petition for a writ of quo warranto in an attempt to circumvent the judges' reliance on the statutory exemptions, which the Nevada Supreme Court ultimately denied. *State of Nevada v. Grierson, et al.*, Case No. 62225 (Mar. 21, 2014).

Defendants Karl Beavers and Timothy Shea were Supervising Marshals. (*Id.* at 8.) During the period of negotiations leading to the MOU and until March of 2014, Beavers and Shea allegedly abused their authority in an effort to coerce Ziggy and other Judicial Deputy Marshals into engaging in workplace practices aimed at encouraging the judges to adopt the MOU. (*Id.* at 6.)  Some of those coercive efforts included threatening the Judicial Deputy Marshals with job termination and criminal sanctions. (*Id.*)  Plaintiffs contend that Beavers' and Shea's coercive tactics created a hostile work environment causing Ziggy to experience panic attacks, anxiety, and depression. (*Id.* at 9.)

On February 28, 2014, Ziggy took leave under the Family Medical Leave Act because the anxiety he was feeling at work had become too much for him. (*Id.*)  Rather than return to work, Ziggy committed suicide on March 21, 2014. (*Id.*)  Plaintiffs assert claims for wrongful death, violations of the National Labor Relations Act ("NLRA"), several state law causes of action, and 42 U.S.C. § 1983. (Dkt. #6.)  Defendants moved to dismiss, asserting that these claims are not properly pleaded. (Dkt. ##16, 19.)

**LEGAL STANDARD FOR DISMISSAL UNDER FED R. CIV. P 12(b)(6)**

A complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. First, the court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the Defendant is liable for the alleged misconduct. *Id*. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994).

Moreover, Rule 15 requires district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Proc. 15(a)(2); *Sonoma County Association of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).  The Ninth Circuit has long recognized that this policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  In the seminal leave-to-amend case of *Forman v. Davis*, the United States Supreme Court explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the Plaintiff] ought to be afforded an opportunity to test his claim on the merits." 371 U.S. 178, 182 (1962).  A district court abuses its discretion by dismissing a complaint without previously granting leave to amend or determining that the allegations, if adequately pleaded, could survive a motion to dismiss. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Still, amendment is not automatic.  The court has discretion to deny amendment. *See Forman*, 371 U.S. at 182.  Courts consider five factors when determining whether to grant leave: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Any of the first four factors can serve as a basis for denying leave to

4

1    amend. *Chudacoff v. University Medical Center of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

2

3                                    **DISCUSSION**

4    I.    **The National Labor Relations Act, the Labor Management Relations Act, and the
5          Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401-531 do
          not provide a private right of action.**

6

7           Plaintiffs assert that "Defendants' actions are a blatant violation of 29 U.S.C. §§ 151-196;

     401 *et seq.*[,] also known as the National Labor Relations Act as amended by the Taft Hartley
8
     Act." (Dkt. #6 at 13.)  While Congress originally codified the National Labor Relations Act
9
10   ("NLRA") at 29 U.S.C. §§ 151-69," Congress has since amended it several times, most notably in

11   1947 with the Taft-Hartley amendments under the Labor Management Relations Act ("LMRA"),

12   19 U.S.C. §§ 141-144, 171-183, 185-187; and later in 1959 with the Landrum Griffin

13   amendments under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.

14   §§ 401-531.

15
            Plaintiffs' claims under the NLRA fail for two reasons.  First, enforcement of the NLRA
16
17   is committed to the National Labor Relations Board ("NLRB") in the first instance, and the

18   NLRB's final decisions are subject to appeal only to the court of appeals for the circuit where the

19   alleged violations occurred or where the alleged violator resides or transacts business. 29 U.S.C. §

20   160(e).  Accordingly, I have no jurisdiction over claims arising under the NLRA.  Second, the

21   NLRA expressly excludes from its coverage employees of the States and their political

22   subdivision.  "The term "employer" . . . shall not include . . . any State or political subdivision

23   thereof." 29 U.S.C. § 152(2).

24

25

26

27

28

                                            5

Although the Amended Complaint does not plead claims under LMRA § 301(a),[2] Plaintiffs improperly attempt to rely on it for the first time in their response to the motion to dismiss. (Dkt. #22 at 18.)  *See Acker v. McCormick*, 110 F.3d 67 (9th Cir. 1997) (declining to consider claims raised for the first time in responsive papers).  Nevertheless, § 301(a) provides that a party may bring "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . in any district court of the United States having jurisdiction of the parties[.]" 29 U.S.C. § 185(a).  For jurisdiction to be proper under § 301(a), the suit must be based on an alleged breach of contract between an employer and a labor organization, and the suit's resolution must be focused upon and governed by the terms of the contract. *Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay Counties, Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983) (citing *Castanada v. Dura-Vent Corp.*, 648 F.2d 612, 616 (9th Cir.1981)).

Here, the suit is not based on an alleged breach of a contract or the MOU.  Instead, the allegations focus on (1) the actions that Beavers and Shea allegedly took in attempting to coerce the Judicial Deputy Marshals into becoming parties to the MOU, and (2) the actions taken by Judge Sullivan and her assistants.  Accordingly, even if Plaintiffs had pleaded claims based on § 301(a) in the Amended Complaint, there is no allegation that a breach of the MOU led to Ziggy's suicide.  Moreover, the LMRA incorporates the NLRA's definition of "employer." 29 U.S.C. § 142(3).  Thus, Nevada and its political subdivisions are excluded from the reach of the LMRA. Plaintiffs may not rely on § 301(a).

Plaintiffs' claims under the LMRDA also fail.  While 29 U.S.C. § 412 provides for civil enforcement for violations under the LMRDA, Plaintiffs have not and cannot articulate a proper basis for enforcement.  The LMRDA regulates internal union governances; Congress intended it

---

[2] Codified at 29 U.S.C. § 185(a)

to protect the rights of union members to express opposition without fear of reprisals from union leadership. *Finnegan v. Leu*, 456 U.S. 431, 435 (1982).  Because it is undisputed that Ziggy was never a member of the CCDMA, the LMRDA's provisions are inapplicable.

Plaintiffs' claims (and attempted claims) based on the NLRA, LMRA, and LMRDA are dismissed.  Because another amendment of the Amended Complaint on these grounds would be futile, dismissal is with prejudice.

## II.      Plaintiffs fail to state a claim under 42 U.S.C. § 1983.

The Plaintiffs assert the following allegations in support of their claims under 42 U.S.C. § 1983:

> SHEA, BEAVERS and other officers were conducting manipulative procedures that violated constitutional standards, intimidating Justice Court Marshals.
>
> . . .
>
> As a direct and foreseeable consequence of the custom or policy allowing Justice Court Marshal supervising officials to encourage intimidating and threats of criminality and guilt, Ziggy was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.
>
> . . .
>
> [T]he Supervisory Defendants including Defendant SULLIVAN and other officials with final policymaking authority in the RJC had actual or constructive knowledge that Defendants had authorized and/or personally engaged in decisions from which it would have been plainly obvious to a reasonable supervisory official that violations of Plaintiff's constitutional rights inevitably would occur, including the deviation from the procedures otherwise required under NRS 4.353(1).
>
> . . .
>
> As a direct and foreseeable consequence of the foregoing constitutional deprivations caused by policymaking officials, customs and practices, and policies in the RJC Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, and loss of privacy.

(Dkt. #6 at ¶¶ 80, 83, 93, 101.)

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, (1979). The analysis of a claim brought under § 1983 begins by identifying the specific constitutional right allegedly infringed. *See id.*, at 140 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged."). Beyond the mere conclusory allegations that Defendants' organizing tactics violated the Fourth and Fourteenth Amendments, the Amended Complaint fails to articulate any specific constitutional protection that was violated.

## A.   Fourth Amendment Predicate to Plaintiffs' § 1983 Claims

A violation of the Fourth Amendment may occur "when the Government [engages] in physical intrusion of a constitutionally protected area in order to obtain information[.]" *United States v. Jones*, 132 S. Ct. 945, 951 (2012). Similarly, the Fourth Amendment's prohibition against unreasonable searches and seizures of the person is a primary source of constitutional protection against physically abusive governmental conduct. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (same).

Here, however, Plaintiffs have not alleged a physical intrusion of Ziggy's constitutionally protected area or his person. As Defendant Sullivan notes, the Amended Complaint fails to assert that any defendant searched his person or personal belongings, took him into custody, or physically abused him. (Dkt. #19 at 6-7.) In response to Defendant Sullivan's motion, Plaintiffs assert in a section heading that "[t]here are constitutional violations under the Fourth and Fourteenth Amendment[s] in support of a *Monell* claim." (Dkt. #26 at 25.) However, the analysis in that section asserts that Sullivan engaged in deliberate indifference by telling Ziggy that "it was up to him to deal with" the harassment he felt he was receiving, and that he needed "to get a

thicker skin." (Dkt. #26 at 29.) Plaintiffs fail to demonstrate how these allegations support a claim that Sullivan violated protections afforded under the Fourth Amendment.

Plaintiffs attempt to salvage their claim by asserting that "the § 1983 remedy broadly encompasses violations of federal statutory law." (Dkt. #22 at 21 (quoting *Me v. Thiboutot*, 100 S. Ct 2502, 2504 (1980).)  While this is certainly true, the argument fails to rescue Plaintiffs' § 1983 claim under the Fourth Amendment.  First, Plaintiffs' reliance on violations of federal statutes contributes nothing to their attempt to state a § 1983 claim based on constitutional violations.  Second, even if I liberally construe the Amended Complaint as incorporating violations of the NLRA, LMRA, and LMRDA into the § 1983 claims, the claims still fail because (as discussed above) those federal statutory claims must be dismissed with prejudice.  Finally, Plaintiffs raised the federal statutory arguments for the first time in their responsive papers, but never raised them within their Amended Complaint. *Acker v. McCormick*, 110 F.3d 67 (9th Cir. 1997) (declining to consider claims raised for the first time in responsive papers).  Accordingly, Plaintiffs' cannot base their § 1983 claims on alleged violations of these federal statutes.

The Amended Complaint fails to state a § 1983 claim based on violations of the Fourth Amendment.

**B.     Fourteenth Amendment Predicate to Plaintiffs' § 1983 Claims**

While the Amended Complaint asserts a Fourteenth Amendment violation, it does not indicate whether the violation arises under the Equal Protection or Due Process Clauses. Sullivan's motion to dismiss refutes the most likely bases for finding a Fourteenth Amendment violation: under either the Equal Protection or Due Process Clauses. (Dkt. #19 at 6-12.)  Plaintiffs fail to counter any of those arguments.  Accordingly, the Amended Complaint fails to state a § 1983 claim based on violations of the Fourteenth Amendment.

**CONCLUSION**

Because Plaintiffs fail to state any predicate constitutional or federal statutory violations that could support a § 1983 claim, I dismiss all of Plaintiffs' claims under § 1983. Because no federal claims remain, there is no basis for me to assert supplemental jurisdiction over Plaintiffs' state law claims. Thus, those claims are dismissed without prejudice. I will grant Plaintiffs 30 days in which to attempt to amend their Amended Complaint to assert proper federal claims. If they do so, they may re-assert their state law claims. Absent that, the case will be closed and Plaintiffs can attempt to pursue their claims in state court.

Accordingly, **IT IS ORDERED** that Defendants Clark County Deputy Marshals Association's and Karl Beavers' Motion to Dismiss Complaint (Dkt. #16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Diana Sullivan's Motion to Dismiss Complaint (Dkt. #19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have 30 days from the entry of this Order to amend their Amended Complaint in a manner consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions to Strike Joinders (Dkt. ##29, 32) are **DENIED**.

DATED this ⟨25⟩ day of August, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE